# EXHIBIT A

PROPRIETARY RIGHTS, INTELLECTUAL PROPERTY, AND RESTRICTIVE
COVENANTS AGREEMENT

THIS AGREEMENT made and entered into this October 5, 2023 by and between Magnet Forensics Inc. and its affliates (the "**Company**"), and Mario Del Gaudio ("**Employee**"), recites and provides as follows:

WHEREAS, Employee is employed by, or has accepted placement with a professional employer organization and will be placed with Magnet Forensics Inc. or one of its affiliates;

WHEREAS, Employee desires to be placed with the Company,

WHEREAS, Employee's placement with the Company will give him/her access to (a) new and additional training, (b) the Company's customers and customer lists, and/or (c) the Company's confidential and proprietary market knowledge, pricing information, and other Confidential Information.

NOW THEREFORE, in consideration of the above, the adequacy of which consideration is hereby acknowledged, the parties agree to the following:

1.      Employee's Acknowledgements.

    1.1.    Employee acknowledges and agrees that the Company is not the Employee's employer but a client of the Professional Employer Organization who employs the Employee.

    1.2.    Employee acknowledges and agrees that Employee's position is a position of trust and responsibility with access to Confidential Information, trade secrets, and other information concerning employees and customers of the Company.  That information and the relationship between the Company and each of its employees and customers are valuable assets which may not be used for any purpose other than the Company's business. The names of customers are considered Confidential Information of the business which constitute valuable, special, and unique property of the Company.  Customer lists and customer information which have been compiled by the Company represent a material investment of the Company's time and money.

    1.3.    Employee acknowledges and agrees that in the course of Employee's placement with the Company, Employee will do any or all of the following: (i) customarily and regularly solicit customers or prospective customers for the Company; (ii) customarily and regularly engage in making sales or obtaining orders or contracts for products or services to be performed by others; (iii) have a primary duty for managing the Company or any department or subdivision thereof, customarily and regularly direct the work of two or more other employees, and have the authority to hire and fire other employees or have particular weight given to suggestions and recommendations as to the change of status of other employees; or (iv) perform the duties of a key employee or of a professional.

2.      Employee's Warranties and Representations.

2.1. Employee represents and warrants that Employee is not subject to any legal or contractual duty or agreement that would prevent or prohibit Employee from performing Employee's duties for the Company or complying with this Agreement, and that Employee is not in breach of any legal or contractual duty or agreement, including any agreement concerning trade secrets or confidential information, owned by any other person or entity.

2.2. Employee represents and warrants that he/she has not brought and will not bring with him/her to the Company or use in the performance of his/her responsibilities for the Company any material or document of a former employer that is not generally available to the public unless Employee has obtained written authorization from the former employer authorizing his/her possession and use. Employee warrants that the only materials or documents of a former employer that are not generally available to the public that will be brought to the Company or used in Employee's placement are identified on Attachment A hereto (if any), and as to each item listed, Employee represents that he/she has obtained before the effective date of placement with the Company written authorization for possession and use in his/her placement with the Company.

3.     Proprietary Rights.

3.1. Employee recognizes the Company's proprietary rights in the tangible and intangible property of the Company and acknowledges that Employee has not obtained or acquired and shall not obtain or acquire any personal property rights in any of the property of the Company or its successors, affiliates or related companies ("*Affiliates*") including, without limitation, any writing, communications, manuals, documents, instruments, contracts, agreements, files, literature, data, technical information, know-how, software, secrets, formulas, products, methods, procedures, processes, devices, apparatuses, trademarks, trade names, trade styles, service marks, logos, copyrights, patents, inventions, discoveries, whether or not patentable, which Employee may have previously conceived or made, or may conceive or make, either alone or in conjunction with others, and related to the business of the Company or its successors, Affiliates or related companies (collectively, the "*Materials*").

3.2.  Employee agrees that during his/her placement with the Company and any time afterwards all Materials shall be the sole and exclusive property of the Company. Employee agrees to hold all Materials in trust and strict confidence for the Company and its clients, without disclosing such information to any third parties, whether contained in Employee's memory or embodied in writing or other physical form.

3.3. If Employee has acquired or does acquire, however any right, title or interest in any of the Materials or in any intellectual property rights relating to the Materials, Employee irrevocably assigns all such right, title and interest throughout the world exclusively to the Company including, without limitation, any renewals, extensions or reversions relating thereto and any right to bring an action or to collect compensation for past infringements as detailed in paragraphs 3.3 and 3.4.

2

3.4.    The Company will have the exclusive right to obtain copyright registrations, letters patent, industrial design registrations, trademark registrations or any other protection in respect of the Materials and the intellectual property rights relating to the Materials anywhere in the world.  At the expense and request of the Company, Employee shall, both during and after Employee's placement with the Company, execute all documents and do all other acts necessary in order to enable the Company to protect its rights in any of the Materials and the intellectual property rights relating to the Materials.

4.    Intellectual Property.

4.1.    Employee will promptly disclose in confidence to the Company all inventions, improvements, processes, products, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, Internet products and services, e-commerce products and services, e-entertainment products and services, databases, mask works, trade secrets, product improvements, product ideas, new products, discoveries, methods, software, uniform resource locators or proposed uniform resource locators ("*URLs*"), domain names or proposed domain names, any trade names, trademarks or slogans, which may or may not be subject to or able to be patented, copyrighted, registered, or otherwise protected by law (the "*Inventions*") that Employee makes, conceives or first reduces to practice or create, either alone or jointly with others, during his/her placement with the Company, whether or not in the course of his placement, and whether or not such Inventions are patentable, copyrightable or able to be protected as trade secrets, or otherwise able to be registered or protected by law.

4.2.    Employee acknowledges and agrees that any copyrightable works prepared by him within the scope of his placement are "*works for hire*" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. Employee agrees that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Company, (ii) result from work performed by him for the Company, or (iii) relate to the Company's business or current or anticipated research and development (collectively, "Company Inventions"), will be the sole and exclusive property of the Company and are hereby irrevocably assigned by Employee to the Company from the moment of their creation and fixation in tangible media.  For purposes of clarity, the foregoing assignment of Company Inventions does not apply to any Invention for which no equipment, supplies, facilities, or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless (x) the Invention relates to the business of the Company or its actual or demonstrably anticipated research or development, or (y) the Invention results from any work Employee performs for the Company.

4.3.    Employee has listed on Attachment A all Inventions that were made by Employee prior to Employee's placement with the Company, that belong to Employee, that relate to the Company's business, and that are not assigned to the Company.  If no such list is provided, Employee represents that there are no such Inventions.

3

4.4.    In addition to the foregoing assignment of Company Inventions to the Company, Employee hereby irrevocably transfers and assigns to the Company: (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights in any Company Invention; and (ii) any and all "*Moral Rights*" (as defined below) that Employee may have in or with respect to any Company Invention.  Employee also hereby forever waives and agrees never to assert any and all Moral Rights Employee may have in or with respect to any Company Invention, even after termination of his work on behalf of the Company.  "*Moral Rights*" means any rights to claim authorship of a Company Invention, to object to or prevent the modification of any Invention, or to withdraw from circulation or control the publication or distribution of any Company Invention, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

4.5.    Employee agrees to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for the Company's Inventions and all of the Assets in any and all countries.  Employee will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections.  Employee's obligations under this section will continue beyond the termination of his placement with the Company, provided that the Company will compensate Employee at a reasonable rate after such termination for time or expenses actually spent by Employee at the Company's request on such assistance.  Employee appoints the Secretary of the Company as his attorney-in-fact to execute documents on Employee's behalf for this purpose.

5.    <u>Non-Disclosure of Confidential Information</u>.

5.1.    Employee acknowledges that he/she has had and will continue to have access to proprietary and confidential information, data, trade secrets and knowledge (in whatever form) relating to the Company and/or any of its Affiliates and their respective businesses and affairs (the "*Confidential Information*") which includes but is not limited to information containing or concerning business strategies, customers, prospective customers, pricing practices, contracts, marketing and all other information that belongs to or relates to the Company and its business that is essential to the protection of the goodwill of the Company and/or any of its Affiliates and to the maintenance of their competitive position in the industry and that, the disclosure or improper use of which would be highly detrimental to the Company and/or any of its Affiliates.  In recognition of the Company's need to protect the legitimate business interests of the Company and/or any of its Affiliates, Employee covenants and agrees to hold, safeguard and maintain all Confidential Information gained by Employee in any manner or from any source during or through the course of their placement as strictly confidential and wholly owned by the Company and/or any of its Affiliates.  Employee covenants and agrees not to, directly or indirectly:  (i) misappropriate, disclose, transfer, assign, disseminate or otherwise communicate or make available (orally, in writing or otherwise) to any person or entity any Confidential Information, or any part thereof; or (ii) use or reproduce (in whatever form) any

4

Confidential Information for his own benefit or purposes or for the benefit or purposes of any person or entity, except as may be reasonably necessary in the performance of the duties and responsibilities of Employee hereunder and in the best interests of the Company or as otherwise may be authorized expressly in writing by the Company. For purposes of this Agreement, Confidential Information shall also include any and all information about the Company that is not generally known or available to the public, but has been developed, acquired or compiled by the Company at great effort and expense. Employee hereby acknowledges and agrees that the obligations under this Section shall survive the termination of Employee's placement with the Company for any reason whatsoever and shall remain in full force and effect so long as the Confidential Information remains confidential.

5.2.    Employee understands and agrees that any Confidential Information is the property of the Company and is essential to the maintenance of Company's competitive position and accordingly should be kept secret. Employee further understands that, as a general rule, any unpublished information is secret and confidential, has independent economic value and is the subject of reasonable efforts by the Company to prevent its disclosure. In any case where doubt arises, Employee shall obtain written permission from the Company before using or divulging the information in question. Employee specifically agrees to refrain from using to his/her advantage, or to the advantage of any other person, corporation, partnership, firm or entity, any Confidential Information gained from or in connection with his/her placement.

5.3.    In the event Employee is questioned by anyone not employed by the Company or by an employee of or a consultant to the Company not authorized to receive such information, in regard to any Confidential Information or any other secret or confidential work of the Company, or concerning any fact or circumstance relating thereto, or in the event that Employee becomes aware of the unauthorized use of Confidential Information by any party, whether competitive with the Company or not, Employee will promptly notify an executive officer of the Company.

5.4.    In the event that, at any time during his/her placement with the Company or at any time thereafter, Employee receives a request to disclose any Confidential Information under the terms of a subpoena or order issued by a court or by a governmental body, Employee agrees to notify the Company immediately of the existence, terms, and circumstances surrounding such request, to consult with the Company on the advisability of taking legally available steps to resist or narrow such request; and, if disclosure of such Confidential Information is required to prevent Employee from being held in contempt or subject to other penalty, to furnish only such portion of the Confidential Information as, in the written opinion of counsel satisfactory to the Company, Employee is legally compelled to disclose, and to exercise Employee's best efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the disclosed Confidential Information.

5.5.    Pursuant to the Defend Trade Secrets Act of 2016, Employee acknowledges that he/she shall not have criminal or civil liability under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or

5

local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if Employee files a lawsuit for retaliation by the Company for reporting a suspected violation of law, Employee may disclose the trade secret to his attorney and may use the trade secret information in the court proceeding, if he (X) files any document containing the trade secret under seal and (Y) does not disclose the trade secret, except pursuant to court order.

6. <u>Return of Property</u>. At any time on the Company's request and immediately upon the termination of Employee's placement with the Company, for any reason, Employee agrees to return to the Company all Company property, including without limitation: (i) all electronic and hard copy files in Employee's possession that relate to Employee's placement with the Company, including e-mails; (ii) all manuals and other documents relating to the Company's software, products, services, or offerings; (iii) all computers and other electronic devices, including smartphones or tablets, issued by the Company to Employee; (iv) all security badges and keys; and (v) all other Company property that Employee received or obtained in the course of placement with the Company. Employee is not permitted to copy or erase any data from Employee's Company computer, or any computer server of the Company, prior to or upon leaving placement with the Company, other than in the normal course of Employee's placement. Should Employee wish to copy or erase any electronic files from a Company computer, server, or other electronic device that Employee believes are personal to Employee, Employee must request and obtain written permission from the Company prior to copying or erasing any such data.

7. <u>Non-Solicitation of Customers</u>. During Employee's placement with the Company and for a period of two (2) years following Employee's separation from the Company for whatever reason, Employee shall not, without the Company's consent, directly or indirectly, contact, solicit, accept solicited business from, or provide services to the Customers of the Company where those services compete with the services that the Company provided or offered during the two (2) years prior to Employee's separation of placement with the Company. The term "*Customer*" shall mean any person, company, or entity with whom Employee had Material Contact and to whom, during the last year of Employee's placement, the Company either (i) sold or provided any products or services to or (ii) was actively soliciting for the purchase of products or services. Employee will be deemed to have had "*Material Contact*" with a Customer if during Employee's placement or the last year of Employee's placement with the Company, whichever is shorter, Employee (i) directly interacted with such Customer; (ii) supervised an employee who interacted with such Customer; or (iii) obtained or received non-public information related specifically to the Company's business or prospective business with such Customer. This restriction is not intended to prohibit Employee from offering similar services or products to persons, companies, or entities that are not Customers.

8. <u>Non-Solicitation of Employees</u>. During Employee's placement with the Company and for two (2) years following Employee's separation from the Company for whatever reason, Employee shall not on Employee's own behalf or on behalf of any other person or entity,

6

directly or indirectly, solicit for placement or hire or assist in the solicitation or hiring of any employee who worked for or is affiliated with the Company and during Employee's placement or the last year of Employee's placement with the Company, whichever is shorter, either (i) reported, directly or indirectly, to Employee, (ii) worked with Employee on any Company-related project, product, or service, or (iii) worked for or with the same Customer(s) as Employee. This restriction includes, but is not limited to: (a) providing to any such prospective employer the identities of any of the Company's employees; or (b) assisting any of the Company's employees in obtaining placement with Employee's new employer through dissemination of resumes or otherwise.

9.    Non-Disparagement.  During Employee's placement with the Company and following Employee's separation from the Company for whatever reason, Employee will not disparage, criticize, or make statements which are negative, detrimental, or injurious to the Company or its clients, including within the Company, except in connection with any legal proceeding, arbitration, or mediation between Employee and the Company.

10.    Review; Injunctive Relief; and Amendment.

10.1.    The Company shall at all times maintain the right to seek enforcement of these provisions whether or not the Company has previously refrained from seeking enforcement of any provision herein or against any other individual who has signed an agreement with similar provisions.

10.2.    Employee acknowledges and agrees that the covenants contained herein are intended to ensure that the Company, its Affiliates, and their respective businesses are not adversely affected by Employee acting in a manner contrary to this Agreement and thereby damaging the results, prospects, and goodwill associated with the business (both present and future) of the Company and/or any of its Affiliates; that a breach of any section of this Agreement will cause serious harm to the Company and/or any of its Affiliates; and that all of the covenants and restrictions contained herein are reasonable and valid and all defenses to the enforcement thereof are hereby expressly waived.

10.3.    Employee acknowledges that because of the difficulty of measuring economic losses to the Company as a result of a breach or threatened breach of any of the foregoing covenants, and because of the immediate and irreparable damage that would be caused to the Company and for which monetary damages would not be a sufficient remedy and would not be fully or adequately compensated by recovery of damages alone, it is hereby agreed that in addition to all other remedies and damages that may be available to the Company hereunder and at law or in equity, the Company shall be entitled to specific performance and any injunctive or other equitable relief as a remedy for any such breach.

10.4.    Employee understands the nature of the burdens imposed by the covenants this Agreement. Employee acknowledges that he/she is entering into the Agreement on his/her own volition, and that he/she has been given the opportunity to have this Agreement reviewed by his/her legal counsel. Employee represents that upon careful review, he/she knows of no reason why any covenant contained in this Agreement is not reasonable and

7

PEO v9152023

enforceable and are necessary and reasonable to protect the interests of the Company and/or any of its Affiliates. Employee further acknowledges and agrees that the restrictions and limitations imposed by this Agreement will not prevent Employee from earning a meaningful livelihood. Employee and the Company desire that the provisions of this Agreement be enforced to the fullest extent permissible under the laws and public policies of the State of Georgia.

10.5. The restrictive covenants set forth in Sections 5 - 10 are of the essence of this Agreement and they shall be construed as agreements independent of (i) any other agreements, or (ii) any other provision in this Agreement. The existence of any claim or cause of action of Employee against the Company, whether predicated on this Agreement or otherwise, regardless of who was at fault and regardless of any claims that either Employee or the Company may have against the other, will not constitute a defense to the enforcement by the Company against Employee of the restrictive covenants. The Company shall not be barred from enforcing the restrictive covenants set forth in Sections 5 - 10 by reason of any breach of (i) any other part of this agreement, or (ii) any other agreement with Employee.

10.6. If any of the restrictive covenants set forth in Sections 5 – 10 are held by a court of competent jurisdiction to be invalid or unenforceable as currently drafted, the Company and Employee request and authorize that court to modify any such provision by limiting and reducing it so as to be enforceable to the maximum extent compatible with applicable law.

10.7. Employee and the Company agree and request that, if a court of competent jurisdiction rules that Employee breached a restrictive covenant contained in this Agreement, the court include in its order that the portion of the restricted time period during which Employee was in breach of the restrictive covenant be added to the remaining restricted period (if any) and that the extended restricted time period resume as of the date of the court's order.

11.    Survivability. Employee and the Company agree that the provisions of this Agreement shall survive any termination of Employee's placement with the Company.

12.    Governing Law; Forum Selection. This Agreement shall be construed in accordance with the laws of the State of Georgia, regardless of any principles of conflicts of laws or choice of laws of any jurisdiction. Employee and the Company agree that the state courts of Fulton County, Georgia, and, if the jurisdictional prerequisites exist at the time, the federal courts in Fulton County, Georgia, shall have exclusive jurisdiction to hear and determine any dispute or controversy arising under or concerning this Agreement. All jurisdictional requirements and objections to venue are deemed expressly waived by signing this Agreement below.

13.    Disputes and Litigation. In the event of any dispute or litigation among the parties with respect to this Agreement, the prevailing party shall be entitled to its costs and expenses, including reasonable attorneys' fees and costs.

8

PEO v9152023

14.    Binding Effect.  This Agreement shall be binding upon, and shall inure to the benefit of all parties and their respective heirs, executors or administrators, personal and legal representatives, estates, legatees, successors, assigns and successor corporations, partnerships and sole proprietorships; provided, however, this Agreement and the rights and obligations hereunder may not be assigned by Employee, but are assignable by the Company.  Employee acknowledges that in the event of a sale of all or substantially all of the assets or stock of Company's business, or any other event or transaction resulting in a change of ownership or control of Company's business, the rights and obligations of the parties hereunder shall inure to the benefit of any transferee, purchaser, or future owner of Company's business.

15.    Severability.  This Agreement shall be enforceable to the fullest extent allowed by law.  In the event that a court holds any provision of this Agreement to be invalid or unenforceable, the parties agrees that, if allowed by law, that provision shall be deemed severable from the remainder of this Agreement, and the remaining provisions contained in this Agreement shall be construed to preserve to the maximum permissible extent the intent and purposes of this Agreement.

16.    Miscellaneous.  This Agreement contains the entire understanding between the parties with reference to the matters contained herein.  There are no terms, conditions, warranties, or representations other than those contained herein.  This Agreement supersedes any and all other understandings or agreements between the parties, either oral or in writing, with respect to the subject matter hereof.  No amendments hereto (except those made by a court of competent jurisdiction pursuant to Sections 11.6 and 16) are valid unless made in writing and signed by both of the parties hereto.  Words importing the singular include the plural and vice versa and words importing gender include all genders.

17.    Recitals and Headings.  The recitals shall be deemed a part of this Agreement and not merely precatory hereto.  The headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date above appearing.

COMPANY:                                              EMPLOYEE:

                                                      Mario Del Gaudio

By: _Angelo Loberto_                                  _Mario Del Gaudio_
    43767F3ED4C241E...                                    A349869434E74D5...
Name: Angelo Loberto, COO                             Signature

 05-Oct-2023                                           06-Oct-2023
_____                                   _____
Date                                                  Date

9

Attachment A

[No material/document has been brought from a previous employer.]

[No prior inventions.]

PEO v9152023