IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAGNET FORENSICS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>MARIO DEL GAUDIO and PARADIGM SHIFT TECHNOLOGY, S.L.,<br><br>*Defendants.* | Case No. 1:26-cv-03781-VMC |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT MARIO DEL GAUDIO'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Mario Del Gaudio's ("Del Gaudio") Motion to Dismiss comes more than four weeks after this Court entered a Preliminary Injunction Order against Del Gaudio and co-Defendant Paradigm Shift Technology, S.L. ("Paradigm), finding a substantial likelihood of success on the merits of Magnet Forensics' claims under the Defend Trade Secrets Act ("DTSA"), the Georgia Trade Secrets Act ("GTSA"), and for breach of contract, including the jurisdictional requirements for those claims. (Order at Dkt. 12.) Despite having received notice prior to the hearing, Del Gaudio did not appear to challenge the Order before it was entered. (*Id.* at 1.) The Court's Order was thus made on an uncontested record that included the Declaration of Ankit Patel, Director of iOS Research at Magnet Forensics, who

supervised Del Gaudio during his placement with Magnet Forensics (Dkt. 11.), along with the Verified Complaint which Del Gaudio now challenges.

Magnet Forensics served Defendants with the Order, which required compliance by July 23, 2026. (Dkt. 13.) In response, Del Gaudio did not move to dissolve the Order for lack of personal jurisdiction. He did not seek a stay. And critically, he did not file a notice of appeal by the August 21, 2026 deadline under 28 U.S.C. § 1292(a)(1) and Federal Rule of Appellate Procedure 4(a)(1)(A), thereby forfeiting his right to appellate review of the Preliminary Injunction Order—including its jurisdictional underpinnings. Instead, nearly three weeks later, Del Gaudio filed a motion to dismiss that repackages arguments he chose not to raise when he had the opportunity.

Del Gaudio's Motion fails on every ground. Personal jurisdiction is established through: (1) this Court's prior exercise of jurisdiction in entering the Preliminary Injunction Order; (2) the forum selection clause in the Proprietary Rights, Intellectual Property, and Restrictive Covenants Agreement ("Agreement") that he executed on October 6, 2023, which expressly covers affiliates of Magnet Forensics, Inc.; (3) pendent personal jurisdiction, which the Eleventh Circuit has adopted for pendent-claim scenarios; and (4) Federal Rule of Civil Procedure 4(k)(2), which provides an independent basis for the DTSA claims. His Rule 12(b)(6) arguments fare no better: the Verified Complaint—signed under penalty of

perjury by Magnet Forensics' Chief Research and Development Officer—alleges a detailed evidentiary chain from Del Gaudio's access to the trade secret through Paradigm's publication of it to the world. Further, this Court has already found that "the record shows that Mr. Del Gaudio acquired the trade secret and Paradigm used it, constituting acts of misappropriation." (Dkt. 12 at 16-17.) Accordingly, Magnet Forensics respectfully requests that the Court deny Del Gaudio's Motion.

## II. ARGUMENTS AND CITATION OF AUTHORITY

### A. The Court Has Already Exercised Personal Jurisdiction Over Del Gaudio

As a threshold matter, this Court has already exercised personal jurisdiction over Del Gaudio by entering the Preliminary Injunction Order. Del Gaudio himself recognizes that personal jurisdiction is a prerequisite for enforceable injunctive relief. (Del Gaudio Br. at 3 n.1, citing *Viral DRM, LLC v. Unknown Counter Notificants*, 688 F. Supp. 3d 1271, 1275 (N.D. Ga. 2023) ("[T]he most basic prerequisite for a TRO [or preliminary injunction] is adequately establishing that the Court may exercise personal jurisdiction over the defendants.").) The Court could not have entered the Preliminary Injunction Order without jurisdiction. It necessarily determined that jurisdiction existed when it entered the Order.

To be clear, Magnet Forensics does not contend that Del Gaudio's compliance with the Preliminary Injunction Order constitutes formal waiver of his personal jurisdiction defense. However, Del Gaudio's conduct goes beyond mere compliance.

He did not move to dissolve the Injunction Order for lack of personal jurisdiction. He did not seek a stay. He did not file an interlocutory appeal under 28 U.S.C. § 1292(a)(1), which authorizes immediate appellate review of preliminary injunctions. And he allowed the August 21, 2026 appeal deadline to lapse without challenge. A defendant who genuinely believes a court lacks personal jurisdiction does not forfeit his right to immediately appeal the injunction.

The sequence of events is telling. Del Gaudio filed his Motion to Dismiss on August 12, 2026, nine days before the appeal deadline. He could have filed a notice of appeal challenging the Court's exercise of personal jurisdiction. He chose not to. Instead, he let the appeal deadline pass and now asks this Court to reverse its own prior Order through a Rule 12(b) motion.

Del Gaudio's Motion is, in substance, a motion for reconsideration of this Court's prior determination. Under Rule 54(b), reconsideration of an interlocutory order is "an extraordinary remedy, to be employed sparingly" and "only when absolutely necessary," which requires a showing of an intervening change of controlling law, newly discovered evidence, or the need to correct a clear error or prevent manifest injustice. *Smith v. Augusta–Richmond Cnty.*, No. CV 110–126, 2012 WL 1355575, at *1-2 (S.D. Ga. Apr. 18, 2012); *Georgia Power Co. v. Charter Comms., LLC*, No. 1:11-CV-4461-MHS, 2013 WL 12247036, at *3 (N.D. Ga. May 28, 2013). Del Gaudio makes no such showing. He presents no new facts and no

new law. He simply repackages arguments he could have raised—and chose not to raise—at the July 16 hearing.

Even setting aside the Court's prior exercise of jurisdiction, personal jurisdiction is independently established on the current record through multiple bases, as set forth below.

## B. Personal Jurisdiction Exists Over Del Gaudio Through Multiple Independent Bases

Under the prima facie standard applicable to Rule 12(b)(2) motions decided without an evidentiary hearing, the court "must construe all reasonable inferences in favor of the plaintiff" and "does not weigh evidence or make credibility determinations." *North American Sugar Industries, Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333-34, 1338-39 (11th Cir. 2025). Thus, the Court must construe all reasonable inferences in Magnet Forensics' favor and may not credit Del Gaudio's self-serving declaration over Magnet Forensics' verified allegations without holding a Rule 12(i) evidentiary hearing.

The Eleventh Circuit applies a burden-shifting framework in Rule 4(k)(2) cases. The plaintiff bears the initial burden of alleging sufficient facts to make out a prima facie case of jurisdiction. *See United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If the defendant submits affidavit evidence contesting jurisdiction, "the burden shifts back to the plaintiff to produce evidence supporting jurisdiction."

*Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1315 (11th Cir. 2025). Critically, however, "conclusory assertions of ultimate fact" in a defendant's affidavit "are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction." *Posner*, 178 F.3d at 1215. Only "specific factual declarations within the affiant's personal knowledge"—as opposed to conclusory denials—trigger the shift. *Mazer*, 556 F.3d at 1274.

### 1. The Forum Selection Clause Confers Personal Jurisdiction

#### a. Magnet Forensics, LLC Is Covered by the Agreement

Del Gaudio argues that Magnet Forensics, LLC is not a party to the Agreement because the defined term "Company" does not include affiliates. (Del Gaudio Br. at 6-11.) This argument is refuted by the Agreement's own terms.

The preamble of the Agreement defines "Company" as "Magnet Forensics Inc. and its affliates." (Ex. A to Compl., Preamble.) Del Gaudio concedes that "affliates" means "affiliates." (Del Gaudio Br. at 7 ("Assuming 'affliates' is meant to say 'affiliates'").). Having acknowledged the intended meaning of the term, Del Gaudio cannot simultaneously argue that it is ambiguous or ineffective.

Critically, Section 17 of the Agreement provides: "The recitals shall be deemed a part of this Agreement and not merely precatory hereto." (Ex. A, § 17.) The preamble's definition of "Company" is therefore a binding contractual term with the same force as any other provision.

Del Gaudio relies on *Georgia Power Co. v. ABB Inc.*, No. 4:17-CV-00125-HLM, 2019 WL 11505721 (N.D. Ga. Feb. 27, 2019), but that case is distinguishable in a fundamental respect. In *Georgia Power*, the defined term "Company" did not include affiliates in its definition. The court refused to read "affiliates" into a term that excluded them. Here, the preamble expressly defines "Company" to include affiliates. Del Gaudio asks this Court to read "affiliates" out of a term that expressly includes them. That is a far heavier lift, and Georgia law does not permit it.

Del Gaudio also argues that the separate use of "Affiliates" (defined in Section 3.1 as "successors, affiliates or related companies") creates redundancy if "Company" also includes affiliates. (Del Gaudio Br. at 7-8.) But the two definitions serve different contractual purposes and operate in different provisions. The preamble definition of "Company" identifies the parties to the Agreement. Section 3.1's definition of "Affiliates" expands the scope of Materials covered by the proprietary rights provisions to include a broader universe: successors, affiliates, and related companies. These are complementary terms serving distinct functions. *See* O.C.G.A. § 13-2-2(4) (requiring courts to give effect to all provisions of a contract).

Section 14 of the Agreement provides an independent basis for Magnet Forensics, LLC's standing: "This Agreement shall be binding upon, and shall inure to the benefit of all parties and their respective heirs, executors or administrators, personal and legal representatives, estates, legatees, successors, assigns and

successor corporations, partnerships and sole proprietorships; provided, however, this Agreement and the rights and obligations hereunder may not be assigned by Employee, but are assignable by the Company." (Ex. A, § 14.) The Complaint alleges that "Magnet Forensics Inc. has assigned to Magnet Forensics, LLC all rights under the Agreement, as expressly permitted by Section 14 of the Agreement." (Compl. ¶ 29.) At the prima facie stage, this allegation is sufficient.

Del Gaudio's declaration that he "did not believe [he] was waiving [his] jurisdictional rights as to affiliates of Magnet Forensics Inc." (Del Gaudio Decl. ¶ 9) is foreclosed by multiple Agreement provisions. Section 10.4 provides that the employee "has been given the opportunity to have this Agreement reviewed by his/her legal counsel." Section 10.2 provides that the employee "acknowledges and agrees that all of the covenants and restrictions contained herein are reasonable and valid and all defenses to the enforcement thereof are hereby expressly waived." And Section 16, the integration clause, provides that "[t]his Agreement contains the entire understanding between the parties." Under Georgia law, contractual intent is determined from the four corners of the agreement, not from one party's uncommunicated subjective understanding. *See* O.C.G.A. § 13-2-1. Further, even if Del Gaudio failed to read what he was actually signing, even the last page that he signed "certainly should have put [him] on notice" of what he was signing had he exercised reasonable diligence. *Pirelli Tire LLC v. Cronrath*, No. 4:12-cv-0068,

2014 WL 12756247, at *11 (N.D. Ga. Jan. 27, 2014); *see also U.S. for Use and Benefit of Hambric Steel and Fabrication, Inc. et al. v. Leebcor Serv., LLC et al.*, No. 4:21-cv-89 (CDL), 2022 WL 345636, at *2 (M.D. Ga. Feb. 4, 2022) ("Choosing not to [read the agreement] for the sake of convenience does not excuse [him] from being bound by the contract that [he] signed.").

**b. The Forum Selection Clause Covers All Claims Against Del Gaudio**

Del Gaudio argues that the forum selection clause in Section 12 extends only to Count III (breach of contract). (Del Gaudio Br. at 11-14.) This argument fails because it ignores applicable case law interpreting language similar to the one here.

Section 12 provides that courts in Fulton County, Georgia "shall have exclusive jurisdiction to hear and determine any dispute or controversy arising under or concerning this Agreement." In the Eleventh Circuit, the phrase "arising under or concerning" is viewed broadly with no meaningful distinction from terms such as "arising out of or relating to." *See Gregory v. Electro-Mech. Corp.*, 83 F.3d 382 (11th Cir. 1996). Courts in this District have also routinely observed that forum selection clauses with "arising out of or relating to" language can "apply to non-contractual claims," and that this includes clauses containing merely "arising under" without additional phrases such as "or in connection with." *Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 1:20-CV-03088-SCJ, 2020 WL 8115878, at *9 n.26 (N.D. Ga. Oct. 27, 2020); *see also* Spinnaker *Int'l L.L.C. v.*

*Greenfence, LLC*, No. 1:17-CV-2749-TWT, 2017 WL 5952270, at *2 & n.26 (N.D. Ga. Dec. 1, 2017) (interpreting "disputes under this Agreement" broadly to include all claims—contract, tort, and quasi-contract—that arose from the contractual employment relationship and distinguishing from arbitration clauses).

Similarly, here, even if the DTSA and GTSA claims do not "arise under" the Agreement in a strict contractual sense, they indisputably "concern" the Agreement. Every claim against Del Gaudio is rooted in the same factual nucleus: Del Gaudio accessed Magnet Forensics' trade secrets pursuant to the Agreement's confidentiality framework, breached the Agreement's restrictions, and disclosed the trade secrets to Paradigm.

Section 10.5 reinforces this reading, providing that the restrictive covenants in Sections 5 through 10 "are of the essence of this Agreement." Claims arising from breach of those covenants are at the Agreement's core. Sections 4.4 and 5.1 further demonstrate that the non-contract claims "concern" the Agreement. Under Section 4.4, Del Gaudio waived all "Moral Rights," including "any rights to claim authorship of a Company Invention, to object to or prevent the modification of any Invention, or to withdraw from circulation or control the publication or distribution of any Company Invention." And under Section 5.1, Del Gaudio agreed not to disclose or misappropriate any confidential information belonging to Magnet Forensics, including its trade secrets. Del Gaudio's act of publishing, or causing Paradigm to

publish, the MSG capability is precisely the exercise of a right he expressly and irrevocably waived and precisely the conduct he agreed not to do. The DTSA and GTSA claims arise directly from Del Gaudio's violation of these provisions.

Del Gaudio invokes the canon of construction against the drafter. (Del Gaudio Br. at 13-14.) But if the clause is unambiguous—and the phrase "arising under or concerning" plainly encompasses claims touching upon the Agreement's subject matter—the canon does not apply.

### 2. Pendent Personal Jurisdiction Extends to All Claims

Even if the forum selection clause covers only Count III, pendent personal jurisdiction extends to the remaining claims. Del Gaudio's argument that pendent personal jurisdiction is not recognized in the Eleventh Circuit (Del Gaudio Br. at 14-15) is wrong.

#### a. *The Eleventh Circuit Has Adopted Pendent-Claim Personal Jurisdiction*

Del Gaudio cites a single case, *Ledbetter v. Cloud 9 Online Smoke & Vape, LLC*, 2026 WL 897015, at *9 (N.D. Ga. Mar. 31, 2026), for the proposition that "[i]t is unclear whether the Eleventh Circuit has even recognized the doctrine." (Del Gaudio Br. at 14.) But Del Gaudio omits binding Eleventh Circuit authority that resolves the question.

In *Cronin v. Washington National Insurance Co.*, 980 F.2d 663 (11th Cir. 1993), the Eleventh Circuit held that "because all of the claims arose from the same

jurisdiction generating event, [the defendant's] alleged failure to provide … health insurance, the district court had personal jurisdiction over the entire case," even though the Florida long-arm statute provided jurisdiction over the contract claim but arguably not the negligence claims. *Id.* at 671.

The Eleventh Circuit reaffirmed *Cronin* in *Thomas v. Brown*, 504 F. App'x 845 (11th Cir. 2013): "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event." *Id.* at 847.

The distinction Del Gaudio ignores is critical. The Eleventh Circuit has adopted pendent-claim personal jurisdiction—the extension of jurisdiction over additional claims against the same defendant already before the court—but has not adopted pendent-party personal jurisdiction, which would extend jurisdiction to entirely new parties. *See Carter v. Ford Motor Co.*, 2021 WL 1165248, at *8 (S.D. Fla. Mar. 26, 2021). This case involves pendent-claim jurisdiction: Del Gaudio is already before the Court on Count III through the forum selection clause, and the remaining claims are additional claims against the same defendant.

b. Ledbetter *Is Distinguishable*

In *Ledbetter*, the court declined to exercise pendent personal jurisdiction after dismissing the RICO claims on which jurisdiction was predicated. 2026 WL 897015, at *9. Here, Count III (breach of contract) has not been dismissed and is not subject

to dismissal. The anchoring claim remains alive, and pendent jurisdiction extends to the remaining claims.

A recently published decision applying pendent personal jurisdiction in the Eleventh Circuit supports Magnet Forensics. In *Weidley v. Aaniiih Nakoda Finance LLC*, 787 F. Supp. 3d 1255 (N.D. Ala. 2025), the court held that once jurisdiction is established under a federal statute's nationwide service provision, pendent personal jurisdiction extends to all "state law claims … arising from the same set of facts, without engaging in the traditional personal jurisdiction analysis." *Id.* at 1274.

*c. All Claims Arise from the Same Jurisdiction-Generating Event*

Under *Cronin and Thomas*, the Court has personal jurisdiction over "the entire case" so long as all claims "arose from the same jurisdiction-generating event." Here, the jurisdiction-generating event is the Agreement and Del Gaudio's breach of it. Every claim against Del Gaudio arises from the same factual nucleus:

- Count I (DTSA): Misappropriation of information Del Gaudio accessed during his placement, which was governed by the Agreement.
- Count II (GTSA): Same operative facts as Count I.
- Count III (Breach of Contract): Direct breach of the Agreement.
- Count IV (Tortious Interference with Business Relationships): Interference enabled by Del Gaudio's breach of the Agreement's confidentiality obligations.

- Count VI (Unjust Enrichment): Enrichment from information obtained under the Agreement.
- Count VII (Civil Conspiracy): Conspiracy to misappropriate information governed by the Agreement.

These claims do not merely share a "general course of conduct"; they arise from a single, unified set of facts centered on the Agreement and its breach. Under *Cronin* and *Thomas*, the Court has personal jurisdiction over all of them.

**3. Rule 4(k)(2) Provides an Independent Jurisdictional Basis for the DTSA Claims**

Even if the forum selection clause and pendent personal jurisdiction were insufficient, Rule 4(k)(2), also known as the national long-arm statute, provides an independent basis for personal jurisdiction over Del Gaudio on the DTSA claims.

Rule 4(k)(2) establishes personal jurisdiction when: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2). The first two elements are undisputed. The DTSA claims arise under federal law, and Del Gaudio resides in Spain, has never resided in any U.S. state, and has not identified any state in which he would be subject to jurisdiction.

The third requirement—consistency with the Fifth Amendment—is also met. In *EE Holding Group LLC v. 18 Threads Clothing Company*, No. 1:25-cv-0743-

VMC, 2026 WL 583282 (N.D. Ga. Jan. 14, 2026) (Calvert, J.), this Court applied Rule 4(k)(2) to exercise personal jurisdiction over a foreign entity with no office, warehouse, employees, or bank account in the United States, finding purposeful availment through online sales activities directed at U.S. consumers. *Id.* at *3-4. The Eleventh Circuit subsequently held in *Rodriguez v. Imperial Brands, PLC*, 182 F.4th 1333 (11th Cir. 2026), that under *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), the Fifth Amendment does not incorporate the Fourteenth Amendment's minimum contacts standard but instead applies a "reasonableness" inquiry. *Rodriguez*, 182 F.4th at 1347.

This Court need not resolve which framework controls, because Del Gaudio's contacts satisfy both. Multiple courts have recognized this principle. *See King v. Bon Charge*, 823 F. Supp. 3d 508, 517 (D. Del. 2025) ("Since asserting personal jurisdiction over Bon Charge would be constitutional under the more exacting pre-*Fuld* standard, it must remain constitutional post-*Fuld*."); *In Cent. Am. Bank for Econ. Integration v. Mossi*, 2025 WL 2732731, at *8 (D.D.C. Sept. 25, 2025) (holding that "[a]ny defendant possessing 'sufficient minimum contacts' would also satisfy the more flexible personal jurisdictional standards set forth in Fuld"); *see A.A. v. Omnicom Grp., Inc.*, 2026 WL 504904, at *7-8 (S.D.N.Y. Feb. 24, 2026) (same).

Under the pre-*Fuld* minimum contacts standard, Del Gaudio's contacts with the United States satisfy the test, and jurisdiction is a fortiori proper under *Fuld*.

During his placement with Magnet Forensics, Del Gaudio traveled to Denver, Colorado from March 11-15, 2024, where he attended restricted team meetings discussing the technical details of the MSG capability. (Patel Decl. ¶¶ 8-14.) He maintained full access to Magnet Forensics' proprietary systems while in Denver. (*Id.* ¶ 13.) This Court has already found that "the uncontested record evidence permits an inference that Mr. Del Gaudio at least partially acquired knowledge of the MSG vulnerability in the United States during the March 2024 offsite meeting in Denver, Colorado." (Dkt. 12 at 16.)

Exercising jurisdiction is also reasonable under the *Rodriguez* factors. Del Gaudio is a sophisticated professional who traveled to the United States for work, voluntarily entered into an Agreement governed by Georgia law with a Georgia forum selection clause, and acquired trade secrets while physically in the United States. He cannot claim surprise at being haled into a U.S. court. The United States has a compelling interest in protecting its companies' trade secrets from foreign misappropriation. And Magnet Forensics has a strong interest in obtaining relief in its home jurisdiction. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997) ("[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.").

**C. The Complaint States Plausible Claims For Relief**

Del Gaudio's Rule 12(b)(6) arguments are foreclosed by this Court's prior

findings and by the detailed factual allegations in the Verified Complaint.

**1. The Court's Preliminary Injunction Finding Strongly Supports the Plausibility of Magnet Forensics' Claims.**

A preliminary injunction requires a "substantial likelihood of success on the merits." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Courts within the Eleventh Circuit have recognized that the preliminary injunction standard is "more stringent" than the motion to dismiss standard, requiring claims to be "not merely plausible, but likely to succeed on the merits." *See, e.g.*, *Am. Airlines, Inc. v. Spada*, No. 23-21844-CIV, 2023 WL 8001220, at *3 (S.D. Fla. Nov. 18, 2023). The logical corollary is that "a complaint that does not state a prima facie case cannot undergird a preliminary injunction." *Id.* at *3. Plausibility is a necessary condition for a preliminary injunction. If the Complaint could not survive a Rule 12(b)(6) motion, the Court could not have found a substantial likelihood of success.

To be sure, a preliminary injunction finding and a pleading-stage determination operate at different procedural stages and on different records. Nevertheless, three features of this case make the Court's Preliminary Injunction finding an especially strong indicator of plausibility.

*First*, the Complaint is a Verified Complaint, signed under penalty of perjury by Magnet Forensics' Chief Research and Development Officer. (Dkt. 1 at 60-61.) A verified complaint carries the weight of an affidavit. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Unlike the typical case where the PI record

includes extrinsic evidence beyond the pleadings, here, the Verified Complaint served as both the core pleading and a key piece of the evidentiary record. The concern over a different procedural stage and record is therefore less salient.

*Second*, the Court's Preliminary Injunction findings were made on an uncontested record. Del Gaudio did not appear at the July 16, 2026 hearing to challenge Magnet Forensics' factual showing. (Dkt. 12 at 1.) The same allegations that Del Gaudio now challenges as implausible are the allegations the Court already credited—without opposition—at the higher standard.

*Third*, Del Gaudio's 12(b)(6) arguments target the same elements the Court already addressed. The Court found that the MSG capability "constitutes a trade secret" (Dkt. 12 at 16), that "the record shows that Mr. Del Gaudio acquired the trade secret and Paradigm Shift used it, constituting acts of misappropriation" (Dkt. 12 at 16-17), and that "the DTSA applies to the international conduct at issue here" (Dkt. 12 at 16). Del Gaudio now asks the Court to find that the Complaint does not plausibly allege the same elements.

None of this means the Court is bound by its PI findings. But where the Court has already found a substantial likelihood of success on the same claims, based substantially on the same verified allegations, and without opposition, Del Gaudio bears a heavy practical burden to show that the Complaint fails at the lower plausibility threshold. As the Southern District of Florida recognized, a claim that

"could not survive a Rule 12(b)(6) motion could not, a fortiori, satisfy the preliminary injunction standard." *Am. Airlines*, 2023 WL 8001220, at *3. The inverse inference—that a claim satisfying the PI standard should, at minimum, satisfy the lower plausibility standard—is compelling on these facts.

### 2. The DTSA and GTSA Claims Are Well-Pleaded

#### a. The DTSA Reaches Del Gaudio's Conduct

Del Gaudio contends that the Complaint fails to allege an "act in furtherance" of misappropriation in the United States. (Del Gaudio Br. at 15-18.) The Complaint's own allegations refute this argument, and the Court's Preliminary Injunction findings independently foreclose it.

The Complaint alleges that Del Gaudio was placed with Magnet Forensics from November 2023 through November 2024. (Compl. ¶¶ 2, 30.) During that placement, he participated in weekly team meetings discussing the MSG capability "in depth" (*id.* ¶ 33); participated in meetings as early as April 2024 addressing the A12/A13 SecureROM vulnerability (*id.* ¶ 34); and was specifically tasked with work requiring hands-on execution of the MSG capability "likely dozens of times" (*id.* ¶ 35). His placement was governed by an agreement executed under Georgia law with a Fulton County forum selection clause. (*Id.* ¶¶ 37-38, 54; Ex. A, § 12.) Drawing all reasonable inferences in Magnet Forensics' favor, as the Court must at the 12(b)(6) stage, these allegations support the plausible inference that Del Gaudio

acquired the trade secret, at least in part, through activities occurring in the United States. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, under *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 108 F.4th 458, 481 (7th Cir. 2024), the "act in furtherance" standard does not require a completed act of domestic misappropriation; it requires only that the act "manifests that the [offense] is at work." 108 F.4th at 487. The Fourth Circuit recently confirmed the DTSA's extraterritorial reach in *dmarcian, Inc. v. DMARC Advisor BV*, 182 F.4th 289, 303 (4th Cir. 2026), holding the DTSA's reach is "global" and that a foreign company's conduct "becomes the domain of the DTSA" once the offender has "chosen to operate" in the United States.

Independent of Del Gaudio's domestic activities, the Publication itself constitutes domestic "use" of the trade secret. *Motorola* defined "use" as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant," including "marketing goods that embody the trade secret" and "soliciting customers through the use of information that is a trade secret." 108 F.4th at 484. The Complaint alleges that Paradigm's publication was "part of a deliberate and commercially motivated strategy designed to generate commercial attention for Paradigm Shift's business" and "was calculated to establish Paradigm Shift's credibility in the zero-day exploit market." (Compl. ¶ 98.) It further alleges that the Publication was disseminated by U.S. media outlets and is accessible

throughout the United States. (*Id.* ¶¶ 5, 75, 85.) Under *Motorola* and *dmarcian*, these allegations plausibly allege domestic "use."

**b. The Complaint Alleges Far More Than "Exposure"**

Del Gaudio characterizes the Complaint as alleging mere "exposure" to the trade secret. (Del Gaudio Br. at 16-17.) This mischaracterizes the allegations. The Complaint alleges a detailed factual chain from access to disclosure:

1) Del Gaudio was placed with Magnet Forensics as an Exploit Engineer (Compl. ¶ 30);
2) He participated in weekly team meetings discussing the MSG capability in depth, including specialized tools, custom hardware, and access strategy (*id.* ¶ 33);
3) As early as April 2024, he participated in meetings where the A12/A13 SecureROM vulnerability was discussed in technical detail (*id.* ¶ 34);
4) He was specifically tasked with designing a tool that required him to execute the MSG capability "likely dozens of times" (*id.* ¶ 35);
5) He traveled to Denver, Colorado and attended restricted team meetings where fewer than 20 individuals discussed the MSG capability's technical architecture (Patel Decl. ¶¶ 8-12);[1]

---

[1] The Court may exercise its discretion to consider the Patel Declaration at the pleading stage, as it is part of its own record. *See U.S. v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records.").

6) He maintained full access to Magnet Forensics' proprietary systems while in Denver (Patel Decl. ¶¶ 13-14);

7) His placement expired in November 2024 (*id.* ¶ 36);

8) He became affiliated with Paradigm (*id.* ¶ 67);

9) In June 2026, Paradigm published a blog post disclosing the same capability under a different name (*id.* ¶¶ 68-69);

10) A preserved screenshot links Del Gaudio's name and photograph to the @NotHdesk account associated with the Publication (*id.* ¶ 70(c));

11) The @NotHdesk account is connected to Del Gaudio's personal email address, mario@athdesk.me (*id.* ¶ 70(d));

12) Paradigm coordinated with Apple Product Security before publication (*id.* ¶ 74).

This is not "exposure." It is active, hands-on acquisition followed by disclosure. Under *Motorola*, "acquisition" is itself a form of misappropriation. 108 F.4th at 484. And as this Court recognized, Del Gaudio "would not need to have taken any Magnet hardware or files to reproduce the exploit." (Dkt. 12 at 20 n.10.) In this specialized field, a trade secret can be carried in the mind of an engineer who has executed the capability dozens of times.

Del Gaudio emphasizes the two-year gap between his departure from Magnet Forensics (November 2024) and the Publication (June 2026). (Del Gaudio Br. at 17.)

But temporal gaps between theft and commercial exploitation are common in trade secret cases. In *Motorola* itself, years elapsed between Hytera's initial theft of source code and the launch of its infringing product line. 108 F.4th at 469-70. The gap here is consistent with the Complaint's theory: Del Gaudio left Magnet Forensics, joined Paradigm, and Paradigm developed and published the exploit over time.

**3. The Breach of Contract Claim Is Well-Pleaded**

This Court has already found a likelihood of success on the breach of contract claim: "Mr. Del Gaudio agreed not to disclose Confidential Information, and the Agreement's definition of Confidential Information is broad enough to cover the MSG exploit." (Dkt. 12 at 17.) The Agreement is a valid contract supported by adequate consideration. (Compl. ¶ 40.) Del Gaudio breached multiple provisions, including Sections 3.1, 3.2, 4.2, 4.4, 5.1, and 5.3. (*Id.* ¶ 140.) Section 13 provides that the prevailing party "shall be entitled to its costs and expenses, including reasonable attorneys' fees and costs." Del Gaudio has offered no argument that the breach of contract claim fails on the merits.

**4. GTSA Preemption Is Premature**

Del Gaudio argues that the GTSA preempts Counts IV, VI, and VII. (Del Gaudio Br. at 18-20.) These claims are expressly pleaded "in the alternative." (Compl. ¶¶ 151, 166, 178.) Federal Rule of Civil Procedure 8(d)(2) permits alternative and inconsistent pleading. *See Pipkins v. City of Hoover, Ala.*, 134 F.4th

1163, 1174 (11th Cir. 2025). Further, the issue of preemption should be resolved on a developed factual record, not at the pleading stage. Because the GTSA preemption question depends on whether the common law claims rest on factual allegations that are independent of the trade secret misappropriation—such as whether Del Gaudio violated the customer non-solicitation provision of the Agreement and whether Paradigm and Del Gaudio targeted Magnet Forensics' customer base, thus unlawfully competing against Magnet Forensics, as a result of Del Gaudio having "direct knowledge of Magnet Forensics' customer relationships from his tenure as an Exploit Engineer" (Compl. ¶ 146)—it is premature to resolve preemption before a factual record is developed through discovery.

**D. Alternative Relief**

For the reasons set forth above, Magnet Forensics respectfully submits that personal jurisdiction over Del Gaudio is established on the current record through multiple independent bases, and the Motion to Dismiss should be denied.

In the alternative, if the Court concludes that any factual dispute remains, Magnet Forensics respectfully requests that the Court hold an evidentiary hearing under Rule 12(i). *See North American Sugar*, 124 F.4th at 1338-39 (vacating dismissal where the district court credited the defendants' declarations over the plaintiff's evidence without an evidentiary hearing).

In the further alternative, if the Court concludes that the record requires

additional development, Magnet Forensics requests leave to conduct limited jurisdictional discovery targeting: (1) the corporate relationship between Magnet Forensics Inc. and Magnet Forensics, LLC; and (2) Del Gaudio's contacts with the United States and his communications with Paradigm regarding the MSG capability. *See Rothschild & Co. Continuation Holdings A.G. v. Sklarov*, 440 F. Supp. 3d 1385, 1395 (N.D. Ga. 2020) ("A qualified right to take jurisdictional discovery exists where a jurisdictional question is 'genuinely in dispute,'" and a plaintiff "should be given [the] opportunity to discover facts that would support [its] allegations of jurisdiction").

Further, Magnet Forensics has sufficiently stated its claims. If the Court finds otherwise, given that Magnet Forensics has not previously amended its Complaint and discovery has not begun, Magnet Forensics respectfully requests an opportunity to amend. *See* Fed. R. Civ. P. 15(a) ("leave [to amend pleadings] shall be freely given when justice so requires"); *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) ("Rule 15(a) severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires.").

## III. CONCLUSION

For the foregoing reasons, Del Gaudio's Motion to Dismiss should be denied in its entirety.

Date: August 26, 2026

Respectfully Submitted,

TROUTMAN PEPPER LOCKE LLP

By: *Moses M. Tincher*
Andrea Martin (PHV Admitted)
Moses M. Tincher
GA Bar No. 578906
600 Peachtree Street NE
Suite 3000
Atlanta, Georgia 30308
(404) 885-2593
moses.tincher@troutman.com

Attorneys for Plaintiff
Magnet Forensics, LLC

**LOCAL RULE 5.1 CERTIFICATION**

I hereby certify that the foregoing has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1.

This 26th day of August, 2026.

*/s/ Moses M. Tincher*
Moses M. Tincher
Georgia Bar No. 578906

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF

system which will automatically send email notification of such filing to all counsel of record.

This 26th day of August, 2026.

*/s/ Moses M. Tincher*
Moses M. Tincher
Georgia Bar No. 578906