**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MAGNET FORENSICS, LLC,

*Plaintiff,*

v.

MARIO DEL GAUDIO and PARADIGM SHIFT TECHNOLOGY, S.L.,

*Defendants.*

Case No. 1:26-cv-03781-VMC

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PARADIGM SHIFT TECHNOLOGY, S.L.'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Paradigm Shift Technology, S.L.'s ("Paradigm") Motion to Dismiss comes more than four weeks after this Court entered a Preliminary Injunction Order against Paradigm and co-Defendant Mario Del Gaudio, finding a substantial likelihood of success on the merits of Magnet Forensics' claims under the Defend Trade Secrets Act ("DTSA"), the Georgia Trade Secrets Act ("GTSA"), and for breach of contract, including the jurisdictional requirements for those claims. (Order at Dkt. 12.) Despite having received notice prior to the hearing, Paradigm did not appear to challenge the Order before it was entered. (*Id.* at 1.) The Court's Order was thus made on an uncontested record that included the Declaration of Ankit Patel, Director of iOS Research at Magnet Forensics, who supervised Defendant Mario

Del Gaudio during his placement (Dkt. 11.), along with the Verified Complaint which Paradigm now challenges.

Magnet Forensics served Defendants with the Order, which required compliance by July 23, 2026. (Dkt. 13.) Paradigm complied with the Order and removed the Publication. It did not move to dissolve the Order for lack of personal jurisdiction. It did not seek a stay. And critically, it did not file a notice of appeal by the August 21, 2026 deadline under 28 U.S.C. § 1292(a)(1) and Federal Rule of Appellate Procedure 4(a)(1)(A), thereby forfeiting its right to appellate review of the Preliminary Injunction Order—including its jurisdictional underpinnings.

Yet, nearly three weeks after *complying* with the Court's Order, Paradigm filed the present Motion asking this Court to dismiss the case for lack of personal jurisdiction. This Motion is, in substance, a motion for reconsideration of the Court's prior jurisdictional determinations made in its Order. Paradigm identifies no intervening change in law, no newly discovered evidence, and no clear error in the Court's prior ruling. Its Motion should be denied.

Moreover, even evaluated entirely independently of the Preliminary Injunction Order, personal jurisdiction over Paradigm is established through multiple independent bases: Federal Rule of Civil Procedure 4(k)(2), including a prior decision by this Court applying Rule 4(k)(2) to exercise personal jurisdiction over a foreign defendant with far fewer contacts with the United States than

Paradigm, the *Calder* effects test, conspiracy jurisdiction through co-Defendant Del Gaudio, and the Georgia long-arm statute. Paradigm's failure-to-state-a-claim arguments fare no better: the Verified Complaint—signed under penalty of perjury by Magnet Forensics' Chief Research and Development Officer—alleges a detailed, evidentiary chain from Del Gaudio's access to the trade secret through Paradigm's publication of it to the world. Further, this Court has already found that "the record shows that Mr. Del Gaudio acquired the trade secret and Paradigm used it, constituting acts of misappropriation." (Dkt. 12 at 16-17.) Accordingly, Magnet Forensics respectfully requests that the Court deny Paradigm's Motion.

## II. ARGUMENTS AND CITATION OF AUTHORITY

### A. The Court Has Already Exercised Personal Jurisdiction Over Paradigm

#### 1. The Preliminary Injunction Necessarily Required Personal Jurisdiction

Personal jurisdiction is "the most basic prerequisite for a TRO" or preliminary injunction. *Viral DRM, LLC v. Unknown Counter Notificants*, 688 F. Supp. 3d 1271, 1275 (N.D. Ga. 2023). A court cannot bind a defendant with injunctive relief unless it has jurisdiction over that defendant. *Id.* Paradigm itself acknowledges this principle. (Paradigm Br. at 6 n.2.)

On July 21, 2026, this Court entered a Preliminary Injunction Order against Paradigm, ordering it to remove the Publication, cease commercial exploitation of the A12/A13 SecureROM access capability, and refrain from further disclosure.

(Dkt. 12 at 20-22.) Paradigm complied. The Court could not have entered this binding Order without personal jurisdiction over Paradigm. Accordingly, the Court has already determined—implicitly but necessarily—that it possesses personal jurisdiction.

### 2. Paradigm's Failure to Challenge Jurisdiction Is Significant

To be clear, Magnet Forensics does not contend that Paradigm's compliance with the Preliminary Injunction constitutes formal waiver of its personal jurisdiction defense. However, Paradigm's conduct goes beyond mere compliance. Paradigm did not move to dissolve the Injunction Order for lack of personal jurisdiction. It did not seek a stay pending resolution of its jurisdictional challenge. It did not file an interlocutory appeal under 28 U.S.C. § 1292(a)(1), which authorizes immediate appellate review of preliminary injunctions. And it allowed the thirty-day appeal deadline under Federal Rule of Appellate Procedure 4(a)(1)(A) to expire on August 21, 2026, without filing any notice of appeal. A defendant who genuinely believes a court lacks personal jurisdiction does not forfeit its right to immediately appeal the injunction. Paradigm's inaction speaks louder than its Motion.

### 3. The Motion Is a *De Facto* Motion for Reconsideration

The sequence of events is telling. Paradigm filed its Motion to Dismiss on August 12, 2026, nine days before the appeal deadline. It could have filed a notice of appeal challenging the Court's exercise of personal jurisdiction. It chose not to.

Instead, it let the appeal deadline pass on August 21, 2026, and now asks this Court to reverse its own prior Order through a backdoor Rule 12(b) motion.

Because the Court already exercised personal jurisdiction over Paradigm, the present Motion is functionally a motion for reconsideration. Under Rule 54(b), reconsideration of an interlocutory order is "an extraordinary remedy, to be employed sparingly" and "only when absolutely necessary," which requires a showing of an intervening change of controlling law, newly discovered evidence, or the need to correct a clear error or prevent manifest injustice. *Smith v. Augusta–Richmond Cnty.*, No. CV 110–126, 2012 WL 1355575, at *1-2 (S.D. Ga. Apr. 18, 2012); *Georgia Power Co. v. Charter Comms., LLC*, No. 1:11-CV-4461-MHS, 2013 WL 12247036, at *3 (N.D. Ga. May 28, 2013). Paradigm makes no such showing, and, thus, its Motion should be denied for this reason alone.

### B. Even Independently of the Preliminary Injunction, Personal Jurisdiction Exists Over Paradigm

Even if the Court evaluates personal jurisdiction *de novo*, Paradigm is subject to this Court's jurisdiction through multiple independent bases.

#### 1. The Verified Complaint and Patel Declaration Carry Evidentiary Weight

As a threshold matter, the Complaint is not an ordinary pleading. It is a Verified Complaint, signed under penalty of perjury by Braden Thomas, Magnet Forensics' Chief Research and Development Officer. (Dkt. 1 at 60-61.) A verified

complaint carries the weight of an affidavit for purposes of a Rule 12(b)(2) motion. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). The Patel Declaration provides additional detailed evidence of Paradigm's U.S.-directed conduct and Del Gaudio's acquisition of the trade secret while physically in the United States.

Under the prima facie standard applicable to Rule 12(b)(2) motions that are decided without an evidentiary hearing, the court "must construe all reasonable inferences in favor of the plaintiff" and "does not weigh evidence or make credibility determinations." *North American Sugar Industries, Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333-34, 1338-39 (11th Cir. 2025). Thus, the Court must construe all reasonable inferences in Magnet Forensics' favor and may not credit Paradigm's self-serving declaration over Magnet Forensics' verified allegations without holding a Rule 12(i) evidentiary hearing.

The Eleventh Circuit applies a burden-shifting framework in Rule 4(k)(2) cases. The plaintiff bears the initial burden of alleging sufficient facts to make out a prima facie case of jurisdiction. *See United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If the defendant submits affidavit evidence contesting jurisdiction, "the burden shifts back to the plaintiff to produce evidence supporting jurisdiction." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1315 (11th Cir. 2025). Critically, however, "conclusory assertions of ultimate fact" in a

defendant's affidavit "are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction." *Posner*, 178 F.3d at 1215. Only "specific factual declarations within the affiant's personal knowledge"—as opposed to conclusory denials—trigger the shift. *Mazer*, 556 F.3d at 1274.

The Pontorieri Declaration's blanket assertions that the blog does not reference or otherwise direct any action toward Georgia or the United States is precisely the type of conclusory denial that is insufficient to shift the burden. (*See generally* Dkt. 18-2.) These assertions are directly contradicted by the specific, detailed, sworn evidence in the Patel Declaration, which establishes the following:

*First*, Paradigm's Publication "is publicly accessible in the United States" and "is not geographically restricted," meaning that "[a]nyone in the United States, including Magnet Forensics' U.S.-based competitors, U.S.-based security researchers, and Apple, Inc., a U.S. company headquartered in Cupertino, California, can access the full technical details of the misappropriated capability." (Patel Decl. ¶ 15.)

*Second*, the Publication "has been reported on by multiple U.S.-based media outlets, including TechCrunch, Mashable, TechRadar, TechRepublic, and Cyber Insider," which "have brought the misappropriated trade secret to the attention of U.S. audiences, including Magnet Forensics' direct competitors and its current and prospective customers." (Patel Decl. ¶ 16.)

*Third*, the Publication "specifically targets a vulnerability in Apple devices" sold, used, and serviced throughout the United States. (Patel Decl. ¶ 17.)

*Fourth*, "Paradigm Shift acknowledged in the Publication that it coordinated disclosure with Apple Product Security prior to publication"—"direct communication between Paradigm Shift in Spain and a U.S. entity regarding the information at issue in this action." (Patel Decl. ¶ 18.)

*Fifth*, the Publication "appears designed to demonstrate Paradigm Shift's technical capabilities to potential customers" and "functions as a marketing vehicle for Paradigm's commercial services, presenting Magnet Forensics' proprietary research as Paradigm Shift's own achievement." (Patel Decl. ¶ 19.)

*Sixth*, Del Gaudio "traveled to the United States to attend a team-wide offsite meeting held in Denver, Colorado" from March 11 through March 15, 2024 (Patel Decl. ¶ 8), where he attended restricted iOS team sessions discussing the A12/A13 SecureROM vulnerability (Patel Decl. ¶¶ 10-11) and maintained "full access to Magnet Forensics' internal resources and network, including the password-protected and encrypted systems on which the MSG capability's technical details were maintained." (Patel Decl. ¶ 13.)

Thus, under the Eleventh Circuit's burden-shifting framework, the Court must construe all reasonable inferences in Magnet Forensics' favor and may not credit the Pontorieri Declaration's conclusory denials over the Patel Declaration's specific

factual allegations without holding a Rule 12(i) evidentiary hearing.

### 2. Rule 4(k)(2) Provides the Jurisdictional Mechanism.

Magnet Forensics does not contend that the DTSA authorizes nationwide service of process. Instead, Rule 4(k)(2), also known as the national long-arm statute, provides the operative mechanism for establishing personal jurisdiction.[1]

Rule 4(k)(2) establishes personal jurisdiction when: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2). The first two elements are undisputed. The DTSA claims arise under federal law, and Paradigm does not dispute that it is not subject to the jurisdiction in any state's courts of general jurisdiction. (Paradigm Br. at 13 n.3.) The "only remaining question is whether the exercise of nationwide jurisdiction over [Paradigm] is 'consistent with the United

[1] Paradigm incorrectly asserts that the Court may exercise jurisdiction only if it determines that jurisdiction exists under Georgia's long-arm statute ***and*** the Due Process Clause of the Fourteenth Amendment. (Paradigm Br. at 6.) Not only does the ***Fifth*** Amendment apply under Rule 4(k)(2), *Jekyll*, 140 F.4th at 1316, but Rule 4(k)(2) operates independently of state jurisdictional requirements. *See Merial Ltd. v. Cipla Ltd.*, No. 3:07-CV-125 CDL, 2011 WL 2489753 (M.D. Ga. June 21, 2011) (analyzing whether federal long-arm jurisdiction under Rule 4(k)(2) applied where record did not support a finding that defendant had sufficient contacts with Georgia under Georgia's long-arm statute). Put another way, Rule 4(k)(2) fills the gap where foreign defendants have sufficient contacts with the United States to justify federal law application but insufficient contacts with any single state to support jurisdiction under that state's long-arm statute. In any event, as explained below, there is also jurisdiction under Georgia's long-arm statute.

States Constitution and laws.'" *Jekyll Island-State Park Auth. v. Polgroup Macau Ltd.*, 140 F.4th 1304, 1316 (11th Cir. 2025).

### 3. Personal Jurisdiction Comports with the Fifth Amendment

#### *a. Both the Pre-*Fuld *and Post-*Fuld *Standards Are Satisfied*

In *EE Holding Group LLC v. 18 Threads Clothing Company*, No. 1:25-cv-0743-VMC, 2026 WL 583282 (N.D. Ga. Jan. 14, 2026) (Calvert, J.), this Court applied Rule 4(k)(2) to exercise personal jurisdiction over GICL, a foreign entity with no office, warehouse, employees, or bank account in the United States. *Id.* at *2-4. The Court found GICL purposefully availed itself of the U.S. market through its Alibaba storefront, noting that approximately sixty percent of its sales went to North America, that its platform used U.S. sizes and USD currency, and that it advertised relationships with U.S. merchants. *Id.* at *3. The Court further applied the *Calder* effects test, finding that GICL's unauthorized use of registered U.S. trademarks constituted an intentional tort aimed at the forum. *Id.* On the fairness prong, the Court concluded that "[t]his Court has an interest in adjudicating the dispute to protect U.S. consumers from trademark infringement" and that "[t]he judiciary has an interest in resolving the case in the district where it was filed and has been pending." *Id.* at *4. The Court in *EE Holding Group* applied the traditional minimum contacts framework under the Fifth Amendment, examining relatedness, purposeful availment, and fair play and substantial justice. *Id.* at *3-4.

The Eleventh Circuit subsequently adopted a different analytical framework in *Rodriguez v. Imperial Brands, PLC*, 182 F.4th 1333 (11th Cir. 2026), holding that, under *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), the Fifth Amendment does not incorporate the Fourteenth Amendment's minimum contacts standard but instead applies a "reasonableness" inquiry evaluating three factors: (1) the burden on the defendant, (2) the interests of the forum, and (3) the plaintiff's interest in obtaining relief. *Rodriguez*, 182 F.4th at 1347.

This Court need not resolve which framework controls, because personal jurisdiction over Paradigm is established under both. *See King v. Bon Charge*, 823 F. Supp. 3d 508, 517 (D. Del. 2025) ("Since asserting personal jurisdiction over Bon Charge would be constitutional under the more exacting pre-*Fuld* standard, it must remain constitutional post-*Fuld*."); *In Cent. Am. Bank for Econ. Integration v. Mossi*, 2025 WL 2732731, at *8 (D.D.C. Sept. 25, 2025) (holding that "[a]ny defendant possessing 'sufficient minimum contacts' would also satisfy the more flexible personal jurisdictional standards set forth in Fuld"); *see also A.A. v. Omnicom Grp., Inc.*, 2026 WL 504904, at *7-8 (S.D.N.Y. Feb. 24, 2026) (same). As demonstrated below, Paradigm's contacts satisfy even the more stringent minimum contacts standard and therefore necessarily satisfy any more flexible post-*Fuld* inquiry.

*b. Paradigm's Contacts with the United States Are Extensive*

Paradigm's contacts with the United States far exceed those that supported jurisdiction in *EE Holding Group*. GICL did not coordinate with any U.S. entity, generate U.S. media coverage, or target products of a U.S. company. Paradigm has at least five substantial contacts:

*First*, the trade secret at issue was developed by Magnet Forensics, LLC, a Delaware limited liability company with its principal place of business in Atlanta, Georgia. (Compl. ¶ 7.)

*Second*, Del Gaudio acquired the trade secret while physically in the United States during the March 2024 Denver offsite. He attended restricted iOS team sessions, worked directly with the MSG capability, and maintained full access to Magnet Forensics' proprietary systems. (Patel Decl. ¶¶ 8-14; Dkt. 12 at 16.)

*Third*, Paradigm coordinated disclosure with Apple Product Security—a function of Apple, Inc., a U.S. company headquartered in Cupertino, California—before publishing the blog post. (Compl. ¶ 74; Patel Decl. ¶ 18.) The coordination confirms Paradigm understood the information was sensitive and proprietary.

*Fourth*, the Publication targets a vulnerability in Apple A12 and A13 chipsets incorporated in iPhones and iPads sold, used, and serviced throughout the United States, directly affecting the security of millions of Apple devices and the ability of U.S. law enforcement to use Magnet Forensics' products. (Patel Decl. ¶ 17.)

*Fifth*, the Publication has been reported on by multiple U.S.-based media outlets, including TechCrunch, Mashable, TechRepublic, and Cyber Insider, bringing the misappropriated trade secret to U.S. audiences, including Magnet Forensics' competitors and customers. (Patel Decl. ¶ 16; Compl. ¶ 85.)

These contacts, taken individually or collectively, demonstrate that Paradigm "purposefully avail[ed] itself of the privilege of conducting activities" directed at the United States. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Paradigm did not merely operate a passive website accessible worldwide. It coordinated with a U.S. company, targeted U.S. devices, generated U.S. media coverage, and published content that functions as a marketing vehicle for its commercial services accessible to U.S. customers.

Each of Magnet Forensics' claims arises directly out of Paradigm's U.S.-directed conduct. The DTSA claim arises from misappropriation of a trade secret developed by a U.S. company, acquired in the United States, and disclosed through a publication directed at the United States. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). The GTSA and tortious interference claims arise from the same conduct, which caused injury to a Georgia-based company.

The exercise of jurisdiction also comports with fair play and substantial justice. This Court has an interest in adjudicating the dispute to protect U.S. trade secrets from foreign misappropriation. Magnet Forensics has a strong interest in

obtaining relief in its home jurisdiction. And Paradigm, as a sophisticated commercial entity, has not demonstrated that litigating in this forum would impose an undue burden—it chose to coordinate with a U.S. company, retained counsel at Baker & McKenzie in Barcelona to respond to Magnet Forensics' cease-and-desist letters, and is represented in this action by Fellows Labriola LLP in Atlanta. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (noting that "progress in communications and transportation," i.e., hiring local counsel and exchanging documents electronically, eases the burdens of litigation on foreign defendants).

*c. The Post-*Fuld *Reasonableness Standard Is Also Satisfied*

Even if this Court applies the *Rodriguez* reasonableness standard rather than the minimum contacts framework, jurisdiction is proper. The *Rodriguez* court identified three factors: (1) the plaintiff's interest in obtaining relief, (2) the interest of the United States, and (3) the burden on the defendant. 182 F.4th at 1347. Each factor weighs in favor of jurisdiction, and each distinguishes *Rodriguez* on its facts.

***Plaintiff's interest in obtaining relief.*** Magnet Forensics is a Delaware LLC headquartered in Atlanta, Georgia. Its trade secrets were developed in the United States. Its customers include U.S. law enforcement agencies, intelligence agencies, and government entities. And the harm from Paradigm's misappropriation—the destruction of the confidentiality of a proprietary capability, damage to competitive

position, and loss of customer relationships—befalls Magnet Forensics in Georgia. Without access to a U.S. forum, Magnet Forensics would be left without an effective remedy for the theft of its most valuable asset.

***Interest of the United States.*** The United States has a direct and compelling interest in protecting its companies' trade secrets from foreign misappropriation. Congress enacted the DTSA specifically to address this interest, finding that "trade secret theft occurs in the United States and around the world" and providing extraterritorial reach precisely to address foreign misappropriation of U.S. trade secrets. DTSA, Pub. L. No. 114-153, § 5, 130 Stat. 376, 383-84. The *Rodriguez* court found the sovereign interest "more attenuated" because the Helms-Burton Act targets "persons whose activity does not necessarily have a close connection to this country." 182 F.4th at 1347. The DTSA is fundamentally different: it contains an express extraterritorial provision, 18 U.S.C. § 1837, that specifically limits its reach to cases where an act in furtherance occurs in the United States. This built-in limitation means the DTSA does not sweep as broadly as the Helms-Burton Act. The sovereign interest here is far closer to the antiterrorism interest recognized in *Fuld*, 606 U.S. at 24, than to the attenuated interest in *Rodriguez*. *Compare Fuld*, 606 U.S. at 24 (United States "has an exceedingly compelling interest" in providing American victims with a forum).

***Burden on the defendant.*** In *Rodriguez*, the defendants "had no contacts with

the U.S." and committed none of the alleged "predicate acts" in the forum. 182 F.4th at 1349. They lacked clear statutory notice, and U.K. law barred their compliance with the Helms-Burton Act. *Id.* at 1348. None of that is true here. Paradigm coordinated directly with Apple, Inc., a U.S. company, before publishing the misappropriated trade secret. It published content targeting Apple devices sold throughout the United States. Its co-defendant Del Gaudio acquired the trade secret while physically in the United States. And Paradigm had clear statutory notice that its conduct could subject it to suit in U.S. courts. The DTSA expressly applies to "conduct occurring outside the United States" where "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2). A sophisticated offensive security firm that publishes a U.S. company's trade secrets after coordinating with a U.S. device manufacturer has fair warning it may face suit. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997) ("[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."). No comparable legal impediment to litigating in the United States exists, and Paradigm Shift has already participated in this litigation through Atlanta counsel and complied with this Court's Preliminary Injunction. This factor does not weigh against jurisdiction.

#### 4. The *Calder* Effects Test Provides an Additional Basis

Under *Calder v. Jones*, 465 U.S. 783 (1984), a defendant who commits an

intentional tort "aimed at" a plaintiff known to reside in the forum is subject to specific jurisdiction there. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1285-86 (11th Cir. 2008). This Court applied the *Calder* effects test in *EE Holding Group*, finding that the unauthorized use of registered U.S. trademarks for commercial gain constituted an "intentional tort" satisfying the effects test's first prong. 2026 WL 583282, at *3 (citing *Licciardello*, 544 F.3d at 1287). The same analysis applies here with even greater force. Paradigm's intentional misappropriation and publication of Magnet Forensics' trade secrets is an intentional act. It was aimed at the United States, where Magnet Forensics is headquartered, where Apple devices containing the affected chipsets are sold, and where Paradigm Shift coordinated disclosure with Apple Product Security. And Paradigm knew or should have known that the harm would befall Magnet Forensics in Georgia. Unlike the defendant in *EE Holding Group*, which merely listed counterfeit products on an e-commerce platform, Paradigm deliberately coordinated with a U.S. company and published a detailed technical disclosure that it knew would destroy the value of a Georgia company's most important proprietary capability.

**5. Conspiracy Jurisdiction Exists Through Co-Defendant Del Gaudio**

If the Court finds personal jurisdiction over Del Gaudio through the forum selection clause, the Complaint's conspiracy allegations (Count VII) provide an independent basis for jurisdiction over Paradigm. The Eleventh Circuit has

recognized that a forum state's "long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in [the forum] in furtherance of the conspiracy." *Mazer*, 556 F.3d at 1281-82 (11th Cir. 2009); *North American Sugar*, 124 F.4th at 1339. The Complaint alleges that Del Gaudio and Paradigm Shift agreed to misappropriate and publicly disclose Magnet Forensics' trade secrets. (Compl. ¶¶ 174-75.) Del Gaudio's consent to jurisdiction in Georgia, combined with the conspiracy allegations, support jurisdiction over Paradigm.

#### 6. The Georgia Long-Arm Statute Provides an Alternative Basis

As an alternative to Rule 4(k)(2), this Court's Injunction Order cited *EchoSpan, Inc. v. Medallia, Inc.*, No. 22-CV-01732-NC, 2024 WL 3463967, at *1-2 (N.D. Cal. Jan. 17, 2024), for the proposition that the GTSA "applies to conduct outside of the state of Georgia where the harm is felt in Georgia." (Dkt. 12 at 16 n.9.) Paradigm's misappropriation caused harm to a Georgia-based company, which supports jurisdiction under O.C.G.A. § 9-10-91(3).

### C. Paradigm Fails To State A Basis For Dismissal Under Rule 12(b)(6)

#### 1. The DTSA Reaches Paradigm's Conduct

Paradigm contends that contends that the Complaint fails to allege an "act in furtherance" of misappropriation in the United States. (Paradigm Br. at 16-18.) The Complaint's own allegations refute this argument, and the Court's Preliminary

Injunction findings independently foreclose it.

The Complaint alleges that Del Gaudio was placed with Magnet Forensics from November 2023 through November 2024. (Compl. ¶¶ 2, 30.) During that placement, he participated in weekly team meetings discussing the MSG capability "in depth" (*id.* ¶ 33); participated in meetings as early as April 2024 addressing the A12/A13 SecureROM vulnerability (*id.* ¶ 34); and was specifically tasked with work requiring hands-on execution of the MSG capability "likely dozens of times" (*id.* ¶ 35). His placement was governed by a Proprietary Rights Agreement executed under Georgia law with a Fulton County forum selection clause. (*Id.* ¶¶ 37-38, 54; Ex. A, § 12.) Drawing all reasonable inferences in Magnet Forensics' favor, as the Court must at the 12(b)(6) stage, these allegations support the plausible inference that Del Gaudio acquired the trade secret, at least in part, through activities occurring in the United States. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, under *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 108 F.4th 458, 481 (7th Cir. 2024), the "act in furtherance" standard does not require a completed act of domestic misappropriation; it requires only that the act "manifests that the [offense] is at work." 108 F.4th at 487. Even if Paradigm itself committed no act in the United States, the DTSA reaches it because Del Gaudio's domestic act satisfies § 1837(2). Courts have consistently held that "domestic 'acts in furtherance' of misappropriation need not be committed by [each] defendant for DTSA to

apply." *Bepex Int'l, LLC v. Micron BV*, No. 19-cv-2997, 2023 WL 2975699, at *7 (D. Minn. Apr. 17, 2023); *vPersonalize Inc. v. Magnetize Consultants Ltd.*, 437 F. Supp. 3d 860, 878-79 (W.D. Wash. 2020). This Court adopted this principle in its Preliminary Injunction Order. (Dkt. 12 at 15.)

Independent of Del Gaudio's activities, the Publication itself constitutes domestic "use" of the trade secret. *Motorola* defined "use" as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant," including "marketing goods that embody the trade secret" and "soliciting customers through the use of information that is a trade secret." 108 F.4th at 484. The Complaint alleges that Paradigm's publication was "part of a deliberate and commercially motivated strategy designed to generate commercial attention for Paradigm Shift's business" and "was calculated to establish Paradigm Shift's credibility in the zero-day exploit market." (Compl. ¶ 98.) It further alleges that the Publication was disseminated by U.S. media outlets and is accessible throughout the United States. (*Id.* ¶¶ 5, 75, 85.) Under *Motorola*, these allegations plausibly allege domestic "use."

Finally, this Court's Preliminary Injunction Order already found, at the "substantial likelihood of success" standard, that "the DTSA applies to the international conduct at issue here." (Dkt. 12 at 16.) That finding was based on the full evidentiary record, including the Patel Declaration's detailed account of Del

Gaudio's acquisition of the trade secret during the March 2024 Denver offsite. (*Id.*) While the Court is not bound by its PI findings at the motion to dismiss stage, the circumstances here are unique in that the Verified Complaint served as both the core pleading and a key piece of the evidentiary record. Thus, Paradigm bears a heavy practical burden of showing that the Complaint fails at the lower plausibility threshold given the Court's findings under the more stringent "substantial likelihood of success" standard. As the Southern District of Florida recognized, a claim that "could not survive a Rule 12(b)(6) motion could not, a fortiori, satisfy the preliminary injunction standard." *Am. Airlines, Inc. v. Spada,* No. 23-21844-CIV, 2023 WL 8001220, at *3 (S.D. Fla. Nov. 18, 2023). The inverse inference—that a claim satisfying the PI standard should, at minimum, satisfy the lower plausibility standard—is compelling on these facts.[2]

**2. The DTSA and GTSA Claims Are Adequately Pleaded**

This Court found that "the record shows that Mr. Del Gaudio acquired the trade secret and Paradigm Shift used it, constituting acts of misappropriation," and that the MSG capability "constitutes a trade secret" because it "is kept secret and its value is in its secrecy." (Dkt. 12 at 16-17.)

The Complaint alleges five independent bases for Paradigm's knowledge: (a)

[2] The Court may exercise its discretion to consider the Patel Declaration at the pleading stage, as it is part of its own record. *See U.S. v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records.").

its coordination with Apple Product Security before publication—one does not coordinate with a device manufacturer's security team before publishing publicly available information; (b) Paradigm describes itself as specializing in "uncovering and exploiting zero-day vulnerabilities," and a company holding itself out as an expert in zero-day research cannot credibly claim ignorance that a production-ready BootROM access capability was developed under conditions of confidentiality (Compl. ¶ 66); (c) it hired the very engineer who developed the MSG capability at Magnet Forensics; (d) Del Gaudio's Agreement contained the DTSA immunity notice required by 18 U.S.C. § 1833(b), and a reasonable firm would inquire about such obligations; and (e) after receiving cease-and-desist letters on June 18 and 19, 2026, Paradigm's counsel expressly disputed all claims and declined to take any remedial action, and the Publication remained accessible for over a month until the Court ordered its removal. (*Id.* ¶ 78.)

Further, while Paradigm emphasizes the approximately two-year gap between Del Gaudio's departure from Magnet Forensics (November 2024) and the Publication (June 2026), this gap is consistent with Magnet Forensics' theory: Del Gaudio left Magnet Forensics, joined Paradigm, and Paradigm developed and published the exploit over time. In *Motorola*, years separated the theft of trade secrets from the launch of the infringing products, yet liability was sustained. 108 F.4th at 469-70. The passage of time between misappropriation and use does not

negate plausibility; it is consistent with a deliberate course of conduct.

**3. Count V (Tortious Interference with Contract) Survives GTSA Preemption**

The GTSA "shall supersede conflicting tort, restitutionary, and other laws…providing civil remedies for misappropriation of a trade secret," but expressly preserves "contractual duties or remedies." O.C.G.A. § 10-1-767(a)-(b). Count V is based on Paradigm's inducement of Del Gaudio to breach his contractual obligations—obligations that encompass confidentiality, intellectual property assignment, and return of property, not merely trade secret protection. *See Amendia, Inc. v. Omni Surgical, LLC*, No. 1:12-CV-1168, 2012 WL 13014953, at *3 (N.D. Ga. Sept. 25, 2012) (preemption does not apply where tortious interference claim introduces facts beyond the trade secret theft, and does not apply to contractual duties). Count V introduces the additional factual allegation that Paradigm Shift was a stranger to the Agreement who, without justification or privilege, induced Del Gaudio to breach obligations that extend beyond trade secret protection, such as property or information that do not rise to the level of a trade secret. *See Angel Oak Mortgage Solutions LLC v. Mastronardi*, 593 F.Supp.3d 1234, 1239 (N.D. Ga. 2022). This is sufficient to survive preemption at the pleading stage.

**4. Alternative Pleading Is Proper for Counts IV, VI, and VII**

Counts IV (tortious interference with business relationships), VI (unjust enrichment), and VII (civil conspiracy) are expressly pleaded in the alternative.

(Compl. ¶¶ 151, 166, 178.) Federal Rule of Civil Procedure 8(d)(2) permits alternative and inconsistent pleading. *See Pipkins v. City of Hoover, Ala.*, 134 F.4th 1163, 1174 (11th Cir. 2025). Further, the issue of preemption should be resolved on a developed factual record, not at the pleading stage. Because the GTSA preemption question depends on whether the common law claims rest on factual allegations that are independent of the trade secret misappropriation, such as whether Paradigm targeted Magnet Forensics' customer base, thus unlawfully competing against Magnet Forensics, as a result of Del Gaudio having "direct knowledge of Magnet Forensics' customer relationships from his tenure as an Exploit Engineer" (Compl. ¶ 146), it is premature to resolve preemption before a factual record is developed through discovery.

**D. Alternative Relief**

For the reasons set forth above, Magnet Forensics respectfully submits that personal jurisdiction over Paradigm is established on the current record and the Motion to Dismiss should be denied. In the alternative, if the Court concludes that any factual dispute remains, Magnet Forensics respectfully requests that the Court hold an evidentiary hearing under Rule 12(i). *See North American Sugar*, 124 F.4th at 1338-39 (vacating dismissal where the district court credited the defendants' declarations over the plaintiff's evidence without an evidentiary hearing).

In the further alternative, if the Court concludes that the record requires

additional development, Magnet Forensics requests leave to conduct limited jurisdictional discovery targeting: (1) Paradigm's coordination with Apple Product Security; (2) its U.S.-accessible revenue and commercial activities; (3) its relationship with Del Gaudio, including when he became affiliated with Paradigm and any communications regarding the MSG capability; and (4) Paradigm's knowledge of Del Gaudio's prior obligations to Magnet Forensics. *See Rothschild & Co. Continuation Holdings A.G. v. Sklarov*, 440 F. Supp. 3d 1385, 1395 (N.D. Ga. 2020) ("A qualified right to take jurisdictional discovery exists where a jurisdictional question is 'genuinely in dispute,'" and plaintiff "should be given [the] opportunity to discover facts that would support [its] allegations of jurisdiction").

Further, Magnet Forensics has sufficiently stated its claims. If the Court finds otherwise, given that Magnet Forensics has not previously amended its Complaint and discovery has not begun, Magnet Forensics respectfully requests an opportunity to amend. *See* Fed. R. Civ. P. 15(a) ("leave [to amend pleadings] shall be freely given when justice so requires"); *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) ("Rule 15(a) severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires.").

## III. CONCLUSION

For the foregoing reasons, Paradigm's Motion to Dismiss should be denied in its entirety.

Date: August 26, 2026

Respectfully Submitted,

TROUTMAN PEPPER LOCKE LLP

By: *Moses M. Tincher*
Andrea Martin (PHV Admitted)
Moses M. Tincher
GA Bar No. 578906
600 Peachtree Street NE
Suite 3000
Atlanta, Georgia 30308
(404) 885-2593
moses.tincher@troutman.com

Attorneys for Plaintiff
Magnet Forensics, LLC

**LOCAL RULE 5.1 CERTIFICATION**

I hereby certify that the foregoing has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1.

This 26th day of August, 2026.

*/s/ Moses M. Tincher*
Moses M. Tincher
Georgia Bar No. 578906

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF

system which will automatically send email notification of such filing to all counsel of record.

This 26th day of August, 2026.

*/s/ Moses M. Tincher*
Moses M. Tincher
Georgia Bar No. 578906